IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| JOSH MALONE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:23-cv-1075 |
| | ) |
| UNITED STATES PATENT AND | ) |
| TRADEMARK OFFICE, | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendant United States Patent and Trademark Office's (USPTO or "Agency") Motion for Summary Judgment and Plaintiff Josh Malone's Cross-Motion for Summary Judgment.

Since September 2012, due to the enactment of the Leahy-Smith America Invents Act, Pub. Law 112-29, 125 Stat. 284 (Sept. 16, 2011), third parties have been permitted to challenge the patentability of previously-issued patent claims before the USPTO's Patent Trial and Appeal Board (PTAB). The third parties can come before PTAB through Inter Partes Review (IPR), Post Grant Review (PGR), and Covered Business Method (CBM) cases (collectively, "AIA proceedings").

These AIA proceedings are typically heard by a panel of three Administrative Patent Judges (APJ). However, from September 2012 to September 2018, the PTAB Chief APJ had authority to expand the

1

panel by adding additional APJs beyond the standard three. There was no formal mechanism to communicate to the parties that the panel had been expanded, but the parties were often notified of the expanded panel through an updated caption page that listed the APJs on the panel on the front of an order, decision, or other paper issued by the PTAB panel. Alternatively, the parties could have been notified of the expansion in communications with the panel, such as participating in a conference call with the new panel. Since September 2018, the process changed to allow for expansion only after the USPTO Director approved the decision of the PTAB Chief APJ to expand the panel. Additionally, parties are now notified of the expansion through the issuance of a Panel Change Order.

Separately, since May 2022, PTAB has used a process called the Circulation Judge Pool (CJP) to review draft panel decisions. Some aspects of the standard operating procedure for CJP review, including whether review is mandatory or permissive for certain decisions, has changed over time, but the mechanics of the review has remained consistent. When a draft decision is circulated to the CJP, made up of at least six non-management APJs, the members of the CJP review and comment on the decision. Once complete, they send the draft with suggested edits and comments back to the panel. While the formalized CJP process is new, the PTAB has had

procedures in place to allow for circulation and review of draft decisions in AIA proceedings since 2013.

In May 2023, Plaintiff submitted a Freedom of Information Act (FOIA) request to the USPTO seeking:

1. The case numbers and names of every IPR, PGR, and CBM case wherein the panel was expanded without notifying the parties. (For instance, the case of *Adidas AG v. Nike, Inc.*, No IPR2013-00067 wherein an email was sent on November 4, 2016 from Scott Boalick to James Arpin stating, "This panel is being expanded to add David and me. We will need to find a time to meet and confer as an expanded panel...")

2. The case numbers and names of every IPR, PGR, and CBM case wherein a USPTO employee who was never publicly assigned to the panel instructed or recommended to the panel to modify their decision.

The USPTO FOIA office responded on September 15, 2023, issuing a letter stating that USPTO did not keep records tracking the information requested about the AIA proceedings and to provide the information would require the USPTO to conduct an extensive amount of research and investigation to analyze records documenting the history of every AIA proceeding, over 14,000 of which have been filed with the USPTO. The letter was not received by Plaintiff's counsel until October 26, 2023.

On December 4, 2023, shortly before Defendant's Motion for Summary Judgment was due, Plaintiff's counsel wrote to Defendant offering a "narrowing" of the request to seek:

1. Production of emails from Scott Boalick to IPR, PGR, or CBM panel members that indicate a panel is being expanded.

3

>   2. Copies of all decisions placed by the Circulation Judge Pool in the CJP's "Returned to Panel folder: S:\Circulation Judge Pool\2 Returned to Panel."

Defendant's counsel replied that she did not believe that these requests were narrowed, but rather they were entirely new requests. Therefore, the requests would need to be submitted through a new FOIA request.

Under Federal Rule of Civil Procedure 56, a court should grant summary judgment if the pleadings and evidence show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made, the opposing party has the burden to show that a genuine dispute of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). This Court finds this case is ripe for summary judgment.

As an initial matter, the Court must address whether Plaintiff's attempt to "narrow" his FOIA requests in December 2023 should be permitted. While FOIA requests are regularly clarified or modified even after a lawsuit is filed, People for Am. Way

4

Found. v. U.S. Dep't of Justice, 451 F. Supp. 2d 6, 12 (D.D.C. 2006), litigation does not give a requester the opportunity to rewrite the requests, Am. Oversight v. U.S. Dep't of Justice, 401 F. Supp. 3d 16, 35 (D.D.C. 2019). Specifically, a requester may not expand the scope of the FOIA request in the course of litigation. Houser v. Church, 271 F. Supp. 3d 197, 204 (D.D.C. 2017); see also Coss v. U.S. Dep't of Justice, 98 F. Supp. 3d 28, 34 (D.D.C. 2015). Even though a requester may be unsatisfied with an agency's response, seeking information outside the scope of the original FOIA request requires a new FOIA request be filed, effective restarting the process. See Kowalczyk v. Dep't of Justice, 73 F.3d 386, 388 (D.C. Cir. 1996) ("A reasonable effort to satisfy that request does not entail an obligation to search anew based upon a subsequent clarification."). Ultimately, it is the requester's responsibility to frame requests with sufficient particularity. Judicial Watch, Inc. v. Dep't of State, 177 F. Supp. 3d 450, 456 (D.D.C. 2016).

In his initial FOIA request, Plaintiff's first item seeks the case numbers and names of every AIA proceeding wherein the panel was expanded without notifying the parties. In the December 4, 2023 email from Plaintiff's counsel, he communicated that Plaintiff instead seeks emails from PTAB Chief APJ Scott Boalick to AIA panel members indicating panel expansion. While there is little doubt that Chief APJ Boalick's emails would shed light on

case numbers and names of AIA proceedings with expanded panels, the new request expands the scope of the initial request. Some of the emails from Chief APJ Boalick concerning panel expansion would likely contain information about the panels and the related cases far beyond the case numbers and names originally sought. This additional information could reasonably include information about the merits of certain cases before the expanded panels, the internal processes and consultations conducted when determining whether a panel should be expanded, requests from AIA panel members for expansion, and more, none of which are within the scope of the original FOIA request. In essence, while the scope of the original request and a properly narrowed request would resemble concentric circles, the two requests at issue here are more akin to a Venn diagram with overlapping circles.

Similar problems plague Plaintiff's second item. Plaintiff originally sought the case numbers and names of every AIA proceeding wherein a USPTO employee who was never publicly assigned to the panel instructed or recommended to the panel to modify their decision. The December 2023 request instead asked for copies of all decisions placed by the CJP in the Returned to Panel folder. Like above, these opinions contain significantly more information than the originally sought case numbers and names, including edits and comments provided by the CJP to the panel APJs. Much of the information that would be provided if these drafts were turned

6

over to Plaintiff would fall widely outside the scope of the original requests. Accordingly, due to the improper scope of the December 2023 requests, the Court will only consider the original FOIA requests to evaluate the instant motions. If Plaintiff desires the documents sought in the December 2023 request, he may file a new FOIA request.

Turning to the substantive claims brought by Plaintiff, "[t]o prevail in a FOIA case, the plaintiff must show that an agency has (1) improperly (2) withheld (3) agency records." Judicial Watch, Inc., 177 F. Supp. 3d at 454 (citations omitted). Plaintiff contends that the Agency erred in two essential respects: conducting an inadequate search and improperly withholding responsive documents.

First, Plaintiff argues that the search performed by the Agency was inadequate. In evaluating Plaintiff's claim, the Court should not look to whether there might be documents possibly responsive to the request, but rather whether the search for those documents was adequate. Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (citing Weisberg v. Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). "The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." Id.

An agency has the initial burden of showing that its search was adequate. Judicial Watch, Inc., 177 F. Supp. 3d at 455. "In

7

demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith." Weisberg, 745 F.2d at 1485. Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'". SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)). Once that burden is met through adequate affidavits, the burden shifts back to the plaintiff to demonstrate a lack of good faith search. Judicial Watch, Inc., 177 F. Supp. 3d at 455 (citing Maynard v. C.I.A., 986 F.2d 547, 560 (1st Cir. 1993)).

However, FOIA does not require an agency to conduct unreasonably burdensome searches. See Assassination Archives & Research Ctr., Inc. v. C.I.A., 720 F. Supp. 217, 219 (D.D.C. 1989) ("FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters."). Nor is an agency required "to expend its limited resources on searches for which it is clear at the outset that no search will produce the records sought." Reyes v. U.S. Environ. Protection Agency, 991 F. Supp. 2d 20, 27 (D.D.C. 2014) (citation omitted). Where an agency's declarations or affidavits establish "that a search is futile . . . the reasonable search required by FOIA may be no search at all." Id. (quoting Amnesty Int'l USA v. CIA, 2008 WL 2519908, at *11 n.17

8

(S.D.N.Y. June 19, 2008)). Once an agency meets its burden of providing adequate declarations or affidavits to show a search would be futile, the burden is on the requester "to show 'that the agency might have discovered a responsive document had the agency conducted a reasonable search.'" Perales v. Drug Enforcement Admin., 21 F. App'x 473, 474 (7th Cir. 2001) (quoting Patterson v. Internal Revenue Serv., 56 F.3d 832, 841 (7th Cir. 1995)).

Moreover, an agency is not required by FOIA to create a document that does not exist to satisfy a request. N. L. R. B. v. Sears, Roebuck & Co., 421 U.S. 132, 161–62 (1975). In Nat'l Sec. Counselors, 898 F. Supp. 2d at 271, the district court provided an example of a FOIA request seeking "an inventory of all non-electronic records created in 1962 regarding the Cuban Missile Crisis." The court noted the agency need not create an inventory if one did not already exist, "though the agency would need to release any such non-electronic records themselves if they were requested and were not exempt from disclosure." Id. The court then held that "a FOIA request for a listing or index of a database's contents that does not seek the contents of the database, but instead essentially seeks information about those contents, is a request that requires the creation of a new record, insofar as the agency has not previously created and retained such a listing or index." Id. (citing People for Am. Way Found., 451 F. Supp. 2d at 15).

9

Defendant has laid out the necessary steps that would need to be taken to conduct a search for Plaintiff's FOIA requests. As it relates to Plaintiff's first item, requesting the case numbers and names of the AIA proceedings wherein the panel was expanded without notifying the parties, the declaration of USPTO's Associate Counsel for the Office of General Law, Caitlin Trujillo, asserts that PTAB would first need to identify all AIA proceedings where a panel had been expanded at any time during the proceeding. Then, PTAB would need to review those cases to determine whether the parties had been notified about the panel being expanded. For Plaintiff's second item, which requests the case numbers and names of every AIA proceeding wherein a USPTO employee who was never publicly assigned to the panel instructed or recommended to the panel to modify their decision, a search would require PTAB APJs to review their communications and documents for every AIA proceeding filed with PTAB since September 2012. Plaintiff does not appear to dispute the procedure outlined in the declaration.

Putting aside the January 2018 list of AIA proceedings with expanded panels ("2018 expanded panel list"), which is discussed further below, the Agency asserts that it does not maintain records sufficient to respond to Plaintiff's FOIA requests. With the first item, the Agency claims it does not track or otherwise maintain a record of its cases where a panel was expanded without notifying the parties. It came to that conclusion after the USPTO FOIA Office

10

staff discussed the requests and PTAB practices and recordkeeping in AIA proceedings with PTAB's FOIA liaison, Lead APJ Scott Moore, Chief APJ Boalick, and Deputy Chief APJ Jacqueline Wright Bonilla.

Breaking the search down into the two-step process outlined in the Agency's declaration, the Agency first claims that it does not track or otherwise maintain a record of cases where a panel was expanded, regardless of whether the parties were notified. The Patent Trial and Appeal Case Tracking System (P-TACTS) tracks the APJs assigned to each case's panel, but it does not track who past panel members were or whether the panel has been expanded. To find that information, Defendant claims the emails of all PTAB Chief APJs since 2012 would need to be searched to identify panels that were expanded. Then, for the Agency to satisfy the first step of its process, it would need to create a list of all AIA proceedings from September 2012 through present where a panel was expanded. Because the Agency does not maintain records showing all cases with an expanded panel and providing such a list of cases would require a significant research project that would culminate in the creation of a new record, Defendant argues any search of its existing records would be futile.

Next, the Agency claims that it does not track or otherwise maintain a record of whether parties were notified of a panel's expansion. To find information about notification would require PTAB to review the case file of every AIA proceeding with an

11

expanded panel to determine whether the parties had been notified about the panel being expanded through a Panel Change Order, subsequent order, decision, other paper, or some other communication with the parties. Again, the Agency claims this step would require a massive research project and the creation of a new record or, at least, an altered version of the list created by the first step.

Plaintiff asserts that Defendant failed to satisfy its burden of demonstrating the adequacy of its search by failing to provide a declaration or affidavit detailing the search terms and type of search performed and stating that all files likely to contain responsive materials were searched. He claims simply contacting APJs to discuss whether there was anything responsive was not sufficient to be considered a proper search. Plaintiff also argues the failure to disclose the 2018 expanded panel list is evidence of either an inadequate search or bad faith.

Initially, the withholding of the 2018 expanded panel list is not evidence of bad faith by Defendant. While the Agency should have disclosed and then turned over the document, as discussed further below, the Agency had a well-founded, although incorrect, belief that the document is not responsive. Based on its representations to the Court, the list is only partially responsive to Plaintiff's request and does not address the issue of notification to the parties. While a partially responsive document

12

of this nature should be turned over, withholding it does not rise to the level of bad faith.

Regarding the search, the first item of the original FOIA requests, as worded, effectively seeks to have the Agency conduct a significant amount of research and create a list of the case numbers and names responsive to the request. Defendant has provided a declaration stating that the Agency's FOIA office consulted with the APJs to determine that PTAB does not keep the records that include the information Plaintiff seeks. The declaration makes clear there is no database or index of cases identifying which panels were expanded, outside of the partial exception of the 2018 expanded panel list, especially since the P-TACTS system does not have a way to search for expanded panels. Without a database to search for expanded cases, Defendant is correct that the likely alternative would be a search through the emails of multiple Chief APJs, which would be a significant undertaking.

On the notification step, the declaration further defines the ability of the P-TACTS system, in that it does not have the ability to easily search orders, decisions, and other papers to determine whether the parties were notified of the expanded panel through updated captions. To locate each of these would not require a search, but rather the Agency would need to undertake a significant research project where the case file of each case with an expanded panel would need to be analyzed to determine if any documents

13

indicated to the parties that the panel had been expanded. It also follows reason that there is no database or index of more informal communications between the panel and the parties that would allow for Defendant to search for notification of an expanded panel through means such as a conference call. Identifying all these types of communication would require searching through the files and emails of every APJ that worked on an expanded panel case since 2012, which goes far beyond what is required under FOIA.

On top of all the extensive research that would be required, Plaintiff's requests would also necessitate the Agency creating a list of case numbers and names that does not already exists. As outlined in Nat'l Sec. Counselors, 898 F. Supp. 2d at 271, FOIA does not require the Agency to undertake such an effort. As no search would provide a responsive record, Defendant's declaration is sufficient to prove that any search would be futile. Accordingly, the Agency was not required to conduct a search beyond what was already done.

As for the second item of the FOIA requests, the Agency claims it does not maintain a record listing case numbers and names of AIA proceedings where a USPTO employee who was not assigned to a panel instructed or recommended to the panel to modify their decision. The Agency claims that PTAB panels may receive review or feedback from multiple sources prior to being finalized, including the CJP, PTAB management or peer APJs, career patent attorneys on

14

PTAB's staff, judicial law clerks, and paralegals. The Agency claims that almost all, if not all, decisions by a panel will receive review from other individuals, although not every review results in an instruction or recommendation to the panel. The Agency asserts that to identify AIA proceedings where panel members received any recommendations would require, at minimum, a review of the decisions, communications, and files for every AIA proceedings filed with PTAB since September 2012. After this review, the Agency would then further need to determine whether any edits or feedback would rise to the level of a "recommendation or instruction to modify the decision." Finally, someone would need to compile all the information into a list with case numbers and names. Like above, Defendant asserts that any search for these records would be futile.

Plaintiff claims that the CJP's Returned to Panel folder is an existing database containing decisions where those outside of the listed panel members recommended modifications to a decision. However, Defendant asserts that the folder is hardly a database, and it instead is a folder that temporarily stores draft decisions after the CJP has completed reviewing them. The folder is not a permanent repository of all draft opinions and documents reviewed by the CJP, as the typical practice is for the panel to remove the draft opinion after retrieving it from the file folder.

15

Common sense would dictate that the Agency would not keep a record of all communications that panel members have with a variety of non-panel members they communicate with on a regular basis. Any FOIA request that would require the agency evaluate every communication that APJs have with non-panel members about any AIA proceeding to determine whether it is responsive to the request is plainly unreasonably burdensome and does not require a search be conducted.

While Plaintiff seeks the case numbers and names from the CJP's Returned to Panel folder, that would require the Agency to either (1) create a list of the case number and names of the decisions in the folder or (2) turn over the draft decisions currently in the folder. As held in Nat'l Sec. Counselors, 898 F. Supp. 2d at 271, requesting a listing or index of the decisions in the folder would require the creation of a new record, which FOIA does not require the Agency to do. As for turning over the draft decisions, as noted above, that request is outside the scope of the original FOIA requests. Furthermore, the folder can hardly be considered a database to be searched for responsive documents when documents are constantly being added and deleted. Accordingly, the Agency again proves that any search would be futile, and it is not required to go beyond the steps it has already taken.

Lastly, even though the Agency did not conduct a full-scale search into Plaintiff's FOIA requests, it identified the 2018 panel

16

expansion list in its pleadings. However, the parties disagree over whether the 2018 panel expansion list is responsive to the first item of Plaintiff's original FOIA requests. Agencies have a duty to interpret FOIA requests liberally and in favor of disclosure. <u>Westinghouse Elec. Corp. v. Schlesinger</u>, 392 F. Supp. 1246, 1249 (E.D. Va. 1974). Documents also need not contain all the information sought to be considered responsive to a request. <u>See Pubien v. Exec. Office for United States Attorneys</u>, 2018 WL 5923917, at *4 (D.D.C. Nov. 13, 2018) (finding that when the requester sought the exact dates a grand jury was in session, a memorandum specifying the dates the grand jury was impaneled and discharged was responsive because, while "the Memo does not contain all the information Plaintiff requested . . ., more specific records do not exist").

While Defendant did not identify the 2018 expanded panel list in its response to Plaintiff's FOIA requests, it did discuss the document in its briefs. According to Defendant, the list was manually compiled in January 2018 by Lead APJ Michelle N. Ankenbrand as a nonauthoritative list of AIA proceedings with expanded panels up to that point in time. Defendant remarks that it does not include any AIA proceedings after January 2018, excludes "families in which the panel was expanded for case resource management," and does not note whether the parties were notified of the panel's expansion. In addition to case names and

17

numbers, the list contains various data and analyses of AIA proceedings, focusing on proceedings with expanded panels.

Plaintiff argues the list is responsive, as it is within the scope of the first item of Plaintiff's original FOIA requests. Defendant contends it is not responsive because it does not include any information about whether the parties were notified about expansion and the Agency is not confident it would satisfy the request's requirement to identify "every" proceeding that meets the specifications.

By the Agency's own account, a response to Plaintiff's first item of the original FOIA request would require the two-step analysis detailed above. While the 2018 expanded panel list does not address notification to the parties, it provides a substantial, albeit incomplete, response to the first step concerning the cases with expanded panels. Even though the list is only partially responsive, that is sufficient to require the Agency turn it over to Plaintiff, as it does not appear that any more specific or responsive record exists. However, Plaintiff is authorized to redact information as permitted under FOIA.

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART, and Plaintiff's Cross-Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART. An appropriate Order shall issue.

18

/s/ Claude M. Hilton

CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
April 10, 2024

19